**CATERPILLAR INC., Plaintiff–Appellant,**

v.

**DEERE & COMPANY, Defendant–Appellee.**

No. 99–1593.

United States Court of Appeals, Federal Circuit.

Sept. 14, 2000.

Rehearing Denied; Rehearing En Banc Declined Oct. 23, 2000.

William K. West, Jr., Howry Simon Arnold & White, LLP, of Washington, DC argued for plaintiff-appellant. On the brief were Michael O. Warnecke and David R. Melton, Mayer, Brown & Platt, of Chicago, Illinois, and Kenneth S. Geller and Donald M. Falk, Mayer, Brown & Platt, of Washington, DC. Of counsel were Michael R. Feagley and Robert S. Rigg, of Chicago, Illinois.

Keith V. Rockey, Rockey, Milnamow & Katz, Ltd., of Chicago, Illinois, argued for defendant-appellee. With him on the brief were Thomas C. Elliott, Jr., and Kathleen A. Lyons. Of counsel on the brief were Raymond L. Hollister and Kevin J. Moriarty, Deere & Company, of Moline, Illinois.

Before MAYER, Chief Judge, PLAGER and LOURIE, Circuit Judges.

Opinion for the court filed by Chief Judge MAYER in which Circuit Judge PLAGER joins. Concurring opinion filed by Circuit Judge PLAGER. Dissenting opinion filed by Circuit Judge LOURIE.

MAYER, Chief Judge.

Caterpillar, Inc. appeals the judgment of the United States District Court for the Northern District of Illinois granting Deere & Company's motion for summary judgment that its model 8000T and 9000T farm tractors do not infringe claims 1, 15, or 37 of Caterpillar's United States Patent 5,279,378 ('378 patent) directed to a "frictionally driven belted work vehicle." *See Caterpillar, Inc. v. Deere & Co.,* No. 96-CV-5355 (N.D.Ill. Aug. 31, 1999). Because the district court improperly resolved genuine issues of material fact that should have been determined by a jury, we vacate and remand.

## Background

Caterpillar is the owner of the '378 patent directed to a "frictionally driven belted work vehicle." Caterpillar filed suit against Deere, alleging that two of its farm tractors, the 8000T and 9000T models, infringed claims 1, 15, and 37 of its '378 patent. Both the patented and the accused vehicles are belt laying vehicles, *i.e.,* they have elastomeric belts that connect and wrap around the front and back wheels on each side of the vehicle. The belt **36** and wheels **24** and **26** of the patented vehicle are depicted in the following figure 1 of the '378 patent:

The claim limitations at issue read in pertinent part as follows:

1. A heavy duty belt laying work vehicle comprising:

. . .

d) means for controllably tensioning and urging each belt's interior surface and said outer peripheral surface of the associated driver into frictional driven engagement, said tensioning means including means for longitudinally separatingly biasing the axis of rotation of the wheel structures of each pair....

'378 patent, col. 16, ll. 46, 61–67.

15. A heavy duty belt laying work vehicle comprising:

. . .

d) means for controllably biasing each belt's interior surface and associated driver's outer peripher-

al surface into frictional driving relationship, said biasing means including means for longitudinally separating the wheel structures of each pair....

*Id.* at col. 18, ll. 20–21, 35–39.

37. A heavy duty belt laying work vehicle comprising:

. . .

d) means for controllably tensioning and urging each belt's interior surface and said outer peripheral surface of the associated driver in to frictional driven engagement, said tensioning means including means for longitudinally separating the wheel structures of each pair....

*Id.* at col. 21, ll. 39–40, ll. 57–62. The parties agree that each of these limitations

is in means-plus-function format[1] and refer to the limitations as the "tensioning means" limitations. They also agree that figure 10 of the patent, depicted as follows, is the structure in the specification that corresponds to each of these limitations:

As shown in figure 10 and explained in column 12 of the patent, the tension in the wheel belt is increased by pushing the entire front axle of the tractor forward hydraulically. The front axle **60** includes base **184** and extension **186** portions. It is connected to the front of the tractor frame **18** by a sliding spherical bearing **178** and pivot pin **180**. The front axle is also connected to the rear of the tractor frame by angled struts **196**. Hydraulic cylinders **202** attach the angled struts to the rear of the tractor frame at a foundation member **198** and thrust block **208**. The hydraulic cylinders move the struts, and thus the front axle and front wheels, forward and backward as needed to keep the wheel belt at the proper tension when the terrain changes or when sticks, mud, or rocks get stuck between the belt and one of the wheels. The sliding spherical bearing and pivot pin connection permits this movement.

The Deere tractors use what is called a "swing link" system to adjust the tension between the belts and wheels on its tractors. This system is depicted in the following two figures (the first figure is a cutaway view from the top and the second is a side view):

---

1. *See* 35 U.S.C. § 112, ¶ 6 (1994) ("An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.").

As shown in these figures, in the swing link system, each of the front, or "idler," wheels is connected to the tractor frame **Z** by a diamond-shaped "swing link" or "lever arm." There is no front axle connecting the front wheels in this system. The back, or "driver," wheels (not shown in this figure) are also attached to the frame, and the wheel belt **X** connects the front and back wheels on each side of the tractor. One end of the swing link connects the front wheel directly to the frame, while the other end of the swing link connects the front wheel to a hydraulic cylinder **Y** that in turn is also connected to the frame. The hydraulic cylinder moves the swing link, and thus the attached wheel, in and out as needed to keep the wheel belt at the proper tension. Each front wheel is adjusted independently of the other.

Deere moved for summary judgment of non-infringement, arguing that no reason-able jury could find that its swing link tensioning mechanism was equivalent under 35 U.S.C. § 112, ¶ 6 to the tensioning mechanism disclosed in the claims of the '378 patent. The court granted Deere's motion because Deere had presented sufficient evidence to prove that its swing link tensioning system was dramatically different in structure, operated in a substantially different way, and provided a number of practical engineering advantages. The court held that no reasonable jury could have found that the accused tension mechanism performed the tensioning function the same way or that the result of the method was insubstantially different from that claimed in the '378 patent. The parties have narrowed their dispute to whether the accused tractors meet a limitation in each of the disputed claims pertaining to adjusting the tension

of the tractor wheel belts around the wheels.

## Discussion

We review a district court's grant of summary judgment *de novo*. *Vanmoor v. Wal–Mart Stores, Inc.*, 201 F.3d 1363, 1365, 53 U.S.P.Q.2d 1377, 1378 (Fed.Cir. 2000) (*citing Petrolite Corp. v. Baker Hughes Inc.*, 96 F.3d 1423, 1425, 40 U.S.P.Q.2d 1201, 1203 (Fed.Cir.1996)). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* Summary judgment is improper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, all of the nonmovant's evidence is to be credited, and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255, 106 S.Ct. 2505.

■ "An infringement analysis of a claim with limitations drafted pursuant to 35 U.S.C. § 112, ¶ 6 (1994), involves … two steps—claim construction and a comparison of the accused device or method with the properly construed claims." *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429, 54 U.S.P.Q.2d 1129, 1133 (Fed.Cir.2000). The critical tensioning means claim limitation "is in means-plus-function form, requiring that it 'be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.'" *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1264, 51 U.S.P.Q.2d 1225, 1227 (Fed.Cir.1999) (quoting 35 U.S.C. § 112, ¶ 6 (1994)). The district court construed the tensioning means in claims 1, 15, and 37 of the '378 patent to require a means for "making the belt taut around the wheels" and a means for "longitudinally separating the front and rear wheels." *Caterpillar*, slip op. at 4. The district court concluded that "[a]s illustrated in Fig. 10 of the '378 patent, the corresponding structure that performs [the tensioning func-

tions] in the '378 patent is a pair of hydraulic cylinders connected to the frame and angled struts linking the pistons in those cylinders to a front axle extending between the idler wheels. The front axle is mounted on a spherical bearing slidably mounted on a fore and aft pivot pin connected to the frame. The claims cover that structure and its equivalents." *Id.* at 4–5. Caterpillar and Deere do not dispute this claim construction.

■ In light of the undisputed claim construction, the key infringement issue before us is whether the accused devices contain the tensioning means of the disputed claims. Whether an accused device or method infringes a claim either literally or under the doctrine of equivalents is a question of fact. *See Insituform Techs., Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 692, 48 U.S.P.Q.2d 1610, 1614 (Fed.Cir.1998). "Literal infringement of a § 112, ¶ 6 limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification." *Odetics*, 185 F.3d at 1267, 51 U.S.P.Q.2d at 1229 (citations omitted). "Functional identity and either structural identity or equivalence are *both* necessary." *Id.* The tests for equivalence under § 112, ¶ 6 and the doctrine of equivalents are closely related, and involve "similar analyses of insubstantiality of differences." *Id.* A reduced version of the well-known tripartite test for the doctrine of equivalents has been applied in the § 112, ¶ 6 context to determine if the differences are insubstantial; an accused device is equivalent when it performs the identical function in substantially the same way to achieve substantially the same result. *See IMS Tech.*, 206 F.3d at 1435, 54 U.S.P.Q.2d at 1138 (citing *Odetics*, 185 F.3d at 1267, 51 U.S.P.Q.2d at 1229–30).

■ The first question is whether the accused devices perform the identical functions recited in the claims—"making the belt taut around the wheels" and

"longitudinally separating the front and rear wheels." Deere conceded that the accused devices perform the broad function recited in the tensioning means limitation. Because the accused devices do not contain the same structure as disclosed in the '378 patent, the only question is whether the Deere tractors contain a structure that is an equivalent of the disclosed structure. Deere argued that its swing link tensioning mechanism was not structurally equivalent to the tensioning means disclosed in the '378 patent. Caterpillar presented considerable evidence, including affidavits and depositions of experts and numerous exhibits, that although structurally different, the accused swing link tensioning system performed the same function in substantially the same way to achieve substantially the same result as the corresponding structure in the claims of the '378 patent.

■ The district court held that no reasonable jury could find the accused and claimed structures to be insubstantially different in the way they performed the tensioning function, because the accused devices lacked a front axle, a spherical bearing, and angled struts and there were differences in the number and size of parts involved. However, "[t]he individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations. Rather, the claim limitation is the overall structure corresponding to the claimed function." *Odetics*, 185 F.3d at 1268, 51 U.S.P.Q.2d at 1230. Therefore, the district court conducted an impermissible component-by-component analysis to determine that no reasonable jury could find structural equivalence.

■ The district court additionally noted that the absence of a front axle which could obstruct the operator's view of the ground resulted in improved operator visibility, which improperly considered potential advantages offered by the accused structure that do not relate to the disputed tensioning function. *See id.* at 1271, 185 F.3d 1259, 51 USPQ2d at 1232 ("That two structures may perform unrelated—and, more to the point, unclaimed—functions differently or not at all is simply not pertinent to the measure of § 112, ¶ 6 equivalents."). Moreover, when properly focusing on the disputed function, "evidence that one of ordinary skill in the art would have recognized the interchangeability of [the accused and claimed structures] for performing the [disputed] functions in the claimed invention . . . should be considered in a § 112, ¶ 6 equivalence determination." *IMS Tech.*, 206 F.3d at 1437, 54 U.S.P.Q.2d at 1139; *see also Al–Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1315–17, 50 U.S.P.Q.2d 1161, 1164–65 (Fed.Cir.1999) (affirming jury verdict of infringement based on expert testimony of known interchangeability of glue and rivet as a "fastening means" on hanger tag for glasses). Here, Caterpillar provided evidence that the accused swing link mechanism was a known alternative tensioning means and had, in fact, been substituted by Caterpillar for the structure disclosed in the '378 patent. The district court discounted this evidence as not answering the advantages claimed by Deere.

While there are admittedly physical differences between the accused and claimed structures, there is at least an issue of fact as to whether those differences are substantial in light of the role played by the tensioning means in the claimed invention. The expert testimony and evidence of known interchangeability were more than sufficient to create a genuine issue of material fact regarding the equivalence of the accused swing link tensioning system to the claimed tensioning means structure under § 112, ¶ 6, which requires the issue of infringement to be submitted to a jury.

### Conclusion

Accordingly, the judgment of the United States District Court for the Northern District of Illinois is vacated and the case is remanded for further proceedings consistent with this opinion.

## COSTS

Each party shall bear its own costs.

**VACATED AND REMANDED.**

PLAGER, Circuit Judge, concurring.

I join the opinion and concur in the conclusion that this case must be returned for trial, but I do so without enthusiasm. If the trial judge sat as the trier of fact, I would find his assessment of the facts unimpeachable. But he does not. Instead, under the rules as we now have them, and because the patentee's lawyer did a good job of building a record of arguably disputable facts, the matter (unless settled) will now go to a jury before whom there will be a lengthy and costly contest of the experts. The jury will then pick a winner; it may be the judge's winner, or it may not. In either event, the case provides a textbook example of the insubstantial nature of the "insubstantial differences" test, and its marginally legitimate child, "substantially the same way to achieve substantially the same result," on which the outcome will turn. May the best lawyer win.

LOURIE, Circuit Judge, dissenting.

I respectfully dissent. I agree with the district court and with Deere that no reasonable jury could have found that Deere's tractors infringed the asserted claims under the doctrine of equivalents. Contrary to the majority's assertion, the court did not perform a component-by-component analysis, it simply applied the well-established law of insubstantial differences to the particular structures at issue. There is no dispute that both the accused and disclosed structures perform the same function, which is to maintain the proper belt tension around the tractor wheels. However, unlike the disclosed structure, which maintains the proper belt tension by moving the entire front axle of the tractor forward or backward, the accused device maintains the proper belt tension in a substantially different way by moving the wheels individually. I also agree with the district court that the accused structure's different way of maintaining belt tension also yields a substantially different result. Mechanical forces are distributed differently, there are fewer and smaller parts, and operator visibility is improved because there is no front axle obstructing the operator's view of the ground below. Accordingly, because both the way in which the disclosed tensioning means functions and the result thereby obtained are substantially different from Deere's swing link system, I agree with the district court that no reasonable jury could have found them to be equivalent under the doctrine of equivalents.