**THE TORO COMPANY, a Delaware Corporation, and Exmark MFG. Co., a Nebraska Corporation, Plaintiffs,**

v.

**SCAG POWER EQUIPMENT, INC., a Wisconsin Corporation, and Metalcraft of Mayville, Inc., a Wisconsin Corporation, Defendants.**

**No. 8:01CV279.**

United States District Court,
D. Nebraska.

Jan. 22, 2003.

---

Alan W. Kowalchyk, Earl D. Reiland, Jeffrey C. Brown, Mark D. Schuman, Merchant, Gould Law Firm, Minneapolis, MN, Dennis L. Thomte, Shane M. Niegergall, Thomte, Mazour Law Firm, Omaha, NE-Donald S. Trevarthen, Bloomington, MN, for Plaintiffs.

David L. DeBruin, Jonathan H. Margolies, Michael, Best Law Firm, Milwaukee, WI, Michael E. Husmann, Best, Friedrich Law Firm, Milwaukee, WI, Richard P. Jeffries, Kutak Rock, LLP, Omaha, NE, Richard H. Marschall Best & Friedrich Law Firm, Toni L. Bonney, Milwaukee, WI, for Defendants.

## MEMORANDUM AND ORDER

BATAILLON, District Judge.

### I. *Introduction*

Scag and Metalcraft ("the defendants") move for summary judgment of non-infringement of U.S. Patent No. 5,822,961 ("'961"). Filing No. 103. Exmark and Toro ("the plaintiffs") oppose the motion. The parties have submitted briefs and indexes of evidence.[1]

### II. *Background*

Plaintiff Exmark is a wholly owned subsidiary of plaintiff Toro; it is located in Beatrice, Nebraska. Defendant Scag is a division of defendant Metalcraft of Mayville; together, they manufacture and sell hydro-drive, walk-behind mowers, Model SWZ/SWZU, which the plaintiffs alleged

---

1. The parties have other pending summary judgment motions. These will be addressed in subsequent orders. This memorandum and order is limited to resolution of the motion for summary judgment of non-infringement on the '961 patent.

infringe Exmark's '961 patent. The Patent and Trademark Office granted the '961 patent to Exmark in October 1998 on its means for adjusting the output of hydraulic pumps that allow the mower to track in a straight line.

### III. *Legal Standard*

*Summary Judgment.* Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The proponent of a motion for summary judgment bears the initial responsibility of showing the absence of a genuine issue of material fact which can be done by pointing to the lack of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the non-moving party must then set forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). When viewing the evidence, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

 *Infringement.* A claim of patent infringement requires the court to first interpret the patent claims to determine their scope, then compare those claims to the allegedly infringing device. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1453 (Fed.Cir.1998) (en banc). The task of interpreting the claims of the '961 patent for purposes of this motion is simplified to an extent by my previous *Markman* order. *See* Filing No. 136.

 When comparing the patented claims to the infringing device, the court will find literal infringement if every limitation in a claim appears in the allegedly infringing device. *Cortland Line Co. v. Orvis Co.,* 203 F.3d 1351, 1358 (Fed.Cir. 2000). Even if no literal infringement exists, a device may still infringe a patented invention if it has elements "identical or equivalent to each claimed element of the patented invention." *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997).

### IV. *Discussion*

The defendants contend that they are entitled to summary judgment of non-infringement of the '961 patent because their hydro-drive, walk-behind Model SWZ/SWZU mowers do not have a structure that corresponds to three limitations in claims 5 and 7 of the '961 patent. Because I conclude that genuine issues of material fact exist, the defendants' motion for summary judgment is denied.

. A. *Location of the Adjustment Means.* I concluded in my *Markman* order that claims 5 and 7 of the '961 patent require the adjustment means to be physically located on the connections means.[2] Filing No. 136 at 9. The defendants now argue that because the adjustment means on their mowers is located on crank arms rather than on the connection means, their

---

**2.** I further concluded that the term "connection means" would be construed as a means-plus-function element governed by 35 U.S.C. § 112, ¶ 6. Filing No. 136 at 11.

mowers do not literally infringe the '961 patent.[3]

The defendants' brief describes in detail several structures found on the allegedly infringing mower. The defendants define their connection means as a jackshaft with cams at either end, located between two "crank arm assemblies." Defendants' Brief at 15. Each crank arm assembly contains a "bell crank 101." *Id.* at 13. The bell crank 101, in turn, has three crank arms, each of which performs a separate function. The first crank arm operates as the lever to rotate each crank arm assembly. *Id.* at 14. The third crank arm 63 is keyed to the trunion shaft; it separately rotates each crank arm assembly when the operator is adjusting the mower's tracking. *Id.* at 13, 14. The defendants state that the adjustment mechanism on their mower is attached to bell crank 101 and its third crank arm 63, but the adjustment mechanisms on the two crank assemblies are not connected, thereby allowing the hydraulic pumps to operate independently. *Id.* at 15. The defendants thus argue that their adjustment means is not on the connections means as required by claims 5 and 7 of the patent, but rather on the crank arms found in the crank arm assembly.

The plaintiffs respond that this argument ignores the actual language of the patent's claims and specifications and instead cobbles together for purposes of this motion a new structure from separate parts of the defendants' mower drive assembly. Claims 5 and 7 state that the connection means interconnects crank arms on the right and left hydraulic pumps. The patent specifications state that each hydraulic pump has a control shaft "rotatably extending outward" from

the pump and on which a "crank arm" is mounted. '961 Patent, Fig. 5, Parts 36 and 44. Further, the specifications describe the connections means as the "collection of mechanical components ... up to the crank arm on the shaft of each hydraulic pump." Plaintiffs' Brief at 6.

The plaintiffs maintain that the defendants' "crank arm assembly" can disguise neither the presence of a crank arm (third crank arm 63) on the defendants' hydraulic pump nor the location of the adjustment means on the connections means. The plaintiffs agree that the defendants' adjustment means is "on" bell crank 101, but insist that that adjustment means (a threaded rod, an adjustment knob, and associated fastening components) is therefore on the defendants' connection means, since the connection means is attached to bell crank 101.

Even such an abbreviated description of the parties' positions as this makes it clear that a genuine issue of material fact remains about whether the connection means of the defendants' mowers has the adjustment means physically on it. Having concluded that a material factual issue exists, I decline to address the other arguments raised in the defendants' brief with regard to the location of the adjustment means.

██ B. *Connection Means.* The defendants' second ground for summary judgment for non-infringement is that their mower lacks a connection means interconnecting crank arms on right and left hydraulic pumps as required by claims 5 and 7. My *Markman* order provided that the term "connection means" would be construed as a means-plus-function element governed by 35 U.S.C. § 112, ¶ 6. Filing No. 136 at 11.

---

**3.** The parties agree that, in general, a crank arm is an arm or lever that rotates the shaft to

which it is attached.

The defendants say that the patent shows a connection means that interconnects the crank arms by "right and left elongated rods (66 and 92) with elongated slots and the shaft (54) together with the associated nuts, bolts and swivels attached to those rods and shaft as shown in figure 5." Defendants' Brief at 26. The defendants argue that their mower contains no structure that corresponds to the connection means described in the '961 patent, since their crank arm assemblies are connected by a shaft with cams on either end. The two connection means therefore could not be interchanged without significant redesign of the mowers. Furthermore, the defendants maintain, their shaft-cam-bell crank connection means is no way equivalent to the shaft-and-rod connection means disclosed in the patent because the two structures operate in different mechanical ways.

The plaintiffs respond that the defendants' analysis is flawed because it focuses only on the differences between the individual components of the linkages to the hydraulic pumps rather than on the "equivalence of the entire mechanical linkage between the crank arms for the hydraulic pumps of [the] mowers" to the patented connection means. Plaintiffs' Brief at 12. The plaintiffs admit that their mowers have some individual parts that differ from the defendants' parts, but they nevertheless contend that the parts in the defendants' mowers are equivalent because they function in the same manner as the parts in the plaintiffs' mowers; the differences in parts reflect engineering choices, not different functions. Further, the plaintiffs maintain that individual parts in a structure are not the claim limitation itself.

The plaintiffs' view is the better statement of the equivalence analysis under § 112, ¶ 6. A claim limitation in § 112, ¶ 6 form

> is literally met by structure, materials, or acts in the accused device that perform the claimed function in substantially the same way to achieve substantially the same result. The individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations. Rather the claim limitation is the overall structure corresponding to the claimed function. This is why structures with different numbers of parts may still be equivalent under § 112, ¶ 6, thereby meeting the claim limitation.

*Odetics, Inc. v. Storage Technology Corp.,* 185 F.3d 1259 (Fed.Cir.1999). *See also Caterpillar Inc. v. Deere & Co.,* 224 F.3d 1374, 1379 (Fed.Cir.2000) (reversing trial court for impermissibly analyzing structural equivalence component by component; an accused device is equivalent if "it performs the identical function in substantially the same way to achieve the same result"). Therefore, whether the structure in the defendants' mowers that interconnects the crank arms on the right and left hydraulic pumps is equivalent to the structure that performs that function in the plaintiffs' mowers presents a genuine issue of material fact to be resolved by the jury. *Insituform Techs. v. Cat Contracting,* 161 F.3d 688, 692 (Fed.Cir.1998) (both literal infringement and infringement under the doctrine of equivalents are a question of fact).

■ C. *Stopping the Mower.* As I held in my *Markman* order, claim 5 and dependent claim 6 of the patent include a limitation that the mower can be adjusted without bringing it to a halt. Filing No. 136 at 13. The defendants contend that they are entitled to summary judgment of non-infringement of the '961 patent because their mower cannot be so adjusted.

The defendants argue that a mower can be adjusted without coming to a halt "only if the adjustment can be safely and reasonably be [sic] made while the mower is moving." Defendants' Brief at 33. The defendants admit that while it is physically possible to adjust their mower while it is moving, it is not safe to do so because the operator would need to move from behind the mower. *Id.* Therefore, the defendants argue, the claims cannot cover a mower that requires the operator to leave the position behind the mower to perform an unsafe adjustment. "The claims of the '961 patent must be interpreted in the context of reasonable and safe operation of the mower claimed." *Id.* at 35.

The plaintiffs respond that this argument not only requires reading additional language into claims 5 and 6, but also is at variance with how the defendants' mower is sold and operated. A corporate officer for defendant Scag testified during a deposition that the defendants' mower comes with no warning label about the danger of adjusting the mower without stopping. The officer also testified that he had frequently seen operators adjusting the mowers while the mowers were still moving, but had never warned them of any danger. In fact, the officer testified that he himself had adjusted the tracking on a mower while operating it. Further, the plaintiffs maintain that case law does not support the defendants' argument that safety risk is a factor in an infringement analysis.

The plaintiffs have correctly identified the defendants' argument as a make-weight. Even if a court could interpose a safety limitation into claim 5 and 6—a doubtful proposition—the testimony here of the defendants' own witness that the tracking on their mower can indeed be adjusted without stopping would require the court to reject the defendants' argument.

Accordingly,

IT IS ORDERED that the defendants' motion for summary judgment of non-infringement of U.S. Patent No. 5,822,961, Filing No. 103, is denied.